283 P.2d 918

**UNION SEED COMPANY OF BURLEY, Inc., an Idaho Corporation, Plaintiff-Respondent,**

v.

**R. M. SAVAGE, Defendant-Appellant.**

No. 8196.

Supreme Court of Idaho.

May 13, 1955.

434

O. R. Baum, Ruby Brown, R. M. Whittier, and Gee & Hargraves, Pocatello, for appellant.

Potvin & Schou, American Falls, for respondent.

ANDERSON, Justice.

In March 1951, appellant, a farmer, and respondent, a seed buyer and processor, entered into written agreements whereby respondent would purchase, at the prevailing market price, appellant's 1951 seed crop of Alta Fescue grass seed, to be grown on eighty acres of land, and White Dutch clover seed, to be grown on forty acres of land, by appellant.

At the time the contracts were executed, respondent advanced $2,500 cash to appellant. In July 1951, appellant delivered Alta Fescue grass seed weighing in at 2,413 lbs. and which, after being cleaned, weighed 1,950 lbs., the tare being approximately 18%. For this seed appellant received a credit, against the cash advance, of $916.50. There is no dispute between the parties as to this lot of seed.

During the latter part of the summer, the seed harvest was completed and the seed was placed in 54 bags, estimated by appellant to weigh around 135 lbs. each. They were stored in appellant's garage and in the latter part of September 1951, respondent

had the seed picked up and delivered to its warehouse in Burley.

There is a dispute as to when part of the seed was cleaned. Part of it was destroyed as of no value. The 54 bags contained not only the Alta Fescue grass seed and White Dutch clover seed respondent agreed to buy, but also alfalfa seed, red clover seed, trefoil, hull timothy, inert matter, foxtail, Chinese lettuce, lambs quarter, weed seeds, and in some instances too many components to analyze accurately.

A dispute arose between the parties as to the quantity and quality of the seed and respondent offered to return the seed or buy it for $5 per hundred weight. Appellant refused these offers and finally told respondent to go ahead and see what could be done with the seed. When the parties were unable to reach a settlement in the matter, suit was filed against appellant seeking judgment for $1,583.50 with interest from March 14, 1951, for return of the money advanced and for which no marketable seed was furnished. Appellant filed an answer, counterclaim and cross-complaint seeking $793.20 in addition to the $2,500 advanced by respondent. The jury returned a verdict for $705.60, plus interest of $75.60, for respondent. Appellant moved for a new trial, which was denied. He then appealed from the judgment and also from the order denying a new trial.

Appellant's first assignment of error is that the court erroneously permitted Exhibit A-1 (a recap. of certain exhibits) to go to the jury, appellant claiming it never was admitted in evidence.

The transcript of evidence discloses that three different times this Exhibit was admitted. On one of these occasions the court stated:

"I am admitting it solely for the purpose of aiding the Jury in considering the exhibits that are put into evidence.

\* \* \* \* \* \*

"It's admitted, subject to counsel examining it; now I don't know if they wish to examine it.

"Mr. Hargraves: We have examined it and made our objection and the court has ruled."

After considerable argument and discussion, the court rejected the exhibit "at this time" and asked appellant's counsel to examine it by the next morning and state whether or not it was accurate, as compared with the exhibits to which it referred. The court specifically stated he was not asking counsel to state as to its probative value.

Counsel for appellant requested and was granted permission to submit a recapitulation of his own. He failed to do this and also failed to question the accuracy of Exhibit A-1, the next morning. He cannot fail to act as requested by the court and then take advantage of his own failure. It seems clear to us that Exhibit A-1 was

admitted, subject to appellant's right to show it was not accurate—which he did not do. Furthermore, the court properly instructed the jury at the time of the admission of the exhibit and again in the formal instructions, explaining its purpose and use.

 Appellant further contends Exhibit A-1 was prejudicial to him for the reason it had the effect of reducing to writing part of the testimony of respondent's witness and emphasizing other previously admitted exhibits, and that it was not a part of respondent's business records. Recapitulations are admissible in the discretion of the trial court and no abuse of that discretion has been shown in this case. The exhibit, therefore, properly went to the jury for their consideration.

 The second assignment of error raised by appellant is that the court erroneously admitted Exhibits H, N, R, S, and T, being packets or envelopes, of seed. He contends these exhibits were misleading and confusing to the jury and prejudicial to appellant, as the seeds in these packets had never been analyzed for purity and there was no expert testimony as to the contents of the packets, and they could serve no purpose in the determination of the issues of the case.

The evidence discloses that partial analysis was made of some of the seed in the packets and that it was impossible to complete a purity test with any accuracy, as to some of the seed.

Appellant relies upon the case of Trego v. Arave, 20 Idaho 38, 116 P. 119, 35 L.R. A., N.S., 1021, in which the court held there was error in admitting, as an exhibit, a bundle of hay for inspection by the jury, as the jurors had not qualified themselves as experts in the market where the hay was sold and the court held the admission of the exhibit was erroneous, especially in that case, as the sample introduced was not proved to be a fair sample of the hay alleged to have been sold.

In the case now before us, the court by Instruction No. 12, specifically prohibited the jury from considering the contents of any of the envelopes. The evidence discloses that efforts were made to analyze the seed contained in these envelopes, and an explanation was given as to why an entirely accurate analysis could not be made, it being due to the large quantities of foreign matter in the seed. Respondent claims these exhibits were admissible to show what each bag of seed contained. We, therefore, deem the Trego case not to be in point here. We doubt the probative value of these exhibits and their admissibility, and are of the opinion the testimony of witnesses in this respect was sufficient and the exhibits should not have been admitted. However, we do not believe that prejudice resulted to appellant, or that reversible error was committed by the admission of these exhibits, in view of the explanations and instructions given by the court.

■ The third assignment of error is that the court erred in the admission of Exhibits I, J, K, and L offered by respondent. These exhibits had written on them, "Over 1% weeds—cannot be sold in State of Idaho" or words and writing of similar import. Appellant contends this is a conclusion and erroneously purports to be a statement of the Idaho Pure Seed law and should have been excluded from the jury.

The court instructed the jury that it should not consider any writing on the envelopes other than those that pertained to quantity, quality, and kind of seed. His Instruction No. 12, which covers this matter, reads as follows:

"With reference to the exhibits in evidence consisting of envelopes containing seeds, you are instructed that under the law you are not to consider the contents of the envelopes themselves, and therefore should not remove any contents or make any attempt to examine the same.

"You are further instructed that you will consider the writing on the outside of the envelopes in connection with the testimony of the witnesses as to quantity of the various lots and as to the quality and mixtures of the various seeds in each lot, but you are not to consider any writings on the envelopes other than those that pertain to quantity and quality and kind of seed. You should disregard all other writings thereon."

Appellant does not deny that the exhibits contain seed with over 1% weed seeds, but apparently objects to the words "—cannot be sold in the State of Idaho." While this should not have appeared on the exhibits, nevertheless, we are of the opinion, in view of the explanations to the jury and the instructions given, there was no prejudice caused appellant. The better practice would appear to be not to permit any writing, about which there is dispute, upon such exhibits to be considered by the jury, although it may not constitute reversible error standing alone. Kleinschmidt v. Scribner, 54 Idaho 185, 196, 30 P.2d 362.

■ The fourth assignment of error is that Exhibit C was erroneously admitted, in that it was prejudicial to appellant and has no bearing on the issues and could only confuse and mislead the jury. This Exhibit is a warehouse receiving record of the load of seed that was delivered in July, which is not in dispute in this case. It was admitted for the restricted purpose of showing the course of the dealings between the parties relative to the seed contracts and to show that the balance of the seed was treated exactly the same as the July load. The evidence discloses discussion as to the cleaning and weighing of the latter seed and we believe this Exhibit did not inject an extraneous issue into the case, nor was it prejudicial to appellant.

■ The fifth assignment of error is to the effect the court erred in giving Instruc-

tion No. 10A in that it injected an issue into the case never contemplated by the parties. This Instruction reads as follows:

"You will also note that the contract is silent as to who should bear the cost of cleaning seed. In this connection, you are instructed that from all the evidence you must determine the intention of the parties on that point and make a finding as to which one was to bear this cost. If you find that the defendant was to bear this cost, then in arriving at your verdict you should give the plaintiff credit for the reasonable value of the cost of such cleaning.

"On the other hand, if you find that the plaintiff was to bear this cost, then you should, in arriving at your verdict, give credit to the defendant for the number of pounds of seed delivered, at the prevailing market price, without any deduction for cost of cleaning."

The evidence discloses discussion and testimony relative to the cost of cleaning seed, and the amount that might possibly be charged therefor. There was a dispute between the parties as to whether the seed weighed 3,700 lbs. or 5,500 lbs. Under all the circumstances of this case, we are of the opinion this Instruction was proper.

The last assignment of error raised by appellant overlaps somewhat with parts of the others. Appellant contends the court erred in giving Instruction No. 12, above quoted, in that it was not sufficient to limit the effect and purpose of Exhibits H through T, and does not fully and properly instruct the jury to disregard certain writings appearing on said Exhibits.

■ Instructions to the jury must be construed as a whole and when so construed, if they properly state the law, they are sufficient. Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Kelly v. Lemhi Irrigation & Orchard Co., 30 Idaho 778, 168 P. 1076.

■ We are of the opinion that Instruction No. 12 is not erroneous and when the instructions are taken together as a whole, they fully, fairly and adequately cover the case and the jury could not have been prejudicially misled. The verdict is sustained by substantial, though conflicting, evidence and it should not be disturbed on appeal. Koehler v. Stenerson, 74 Idaho 281, 260 P.2d 1101.

■ Where there is substantial evidence to support a verdict, judgment will not be reversed on appeal by reason of errors or defects in proceedings which do not affect substantial rights of the parties. Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651.

The judgment is *affirmed*. Costs to respondent.

TAYLOR, C. J., and KEETON, PORTER and SMITH, JJ., concur.